UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

| | | |
|---|---|---|
| EDWARD TYRONE CARTER | ) | |
| *Plaintiff* | ) | |
| | ) | |
| vs. | ) | NO. 5:17-cv-130-GNS |
| | ) | |
| | ) | |
| JASON NEWBY, | ) | **VERIFIED COMPLAINT** |
| in his individual capacity | ) | |
| | ) | |
| **SERVE:**   **Jason Newby** | ) | |
| **City of Hopkinsville Police Dept.** | ) | |
| **101 N. Main St.** | ) | |
| **Hopkinsville, KY 42240** | ) | |
| *Defendant* | ) | |
| | ) | |

Comes now the Plaintiff, Edward Tyrone Carter, by counsel, and for his causes of action

herein and states as follows:

**INTRODUCTION**

1.      This is a claim for monetary damages under 42 U.S.C. § 1983 and under the

statutes and common law of the state of Kentucky against Defendant Jason Newby (Hereafter,

"Newby"). Plaintiff's claims relate to the unconstitutional arrest, prosecution, and unlawful

imprisonment of Plaintiff for a murder that he did not commit. Plaintiff now seeks damages from

the responsible party who was responsible for bringing the false charges and maliciously

prosecuting the case.

2.      Defendant Newby knew or should have known that Plaintiff was innocent.

Despite this knowledge, he intentionally, or acting with deliberate indifference, employed

improper tactics that resulted in Plaintiff's being charged with a murder for which he was

acquitted at trial. Newby intentionally, or acting with deliberate indifference, failed to investigate

other potential suspects in these offenses and disregarded and deliberately concealed facts that were consistent with Plaintiff's innocence. Newby intentionally, or acting with deliberate indifference, conducted an investigation in which Newby fabricated conclusions that were both unsupported by the data, failed to and/or attempted to suppress, exculpatory evidence. Newby intentionally, or acting with deliberate indifference, lied and made false misrepresentations of fact in setting in motion and continuing charges against the Plaintiff, including but not limited to falsely testifying before the grand jury which negates any presumption of probable cause based upon the indictment in this case.

3.      Because of the Defendant Newby's unconstitutional and wrongful actions, Plaintiff spent almost three years in jail waiting for trial for a crime which he did commit.

## JURISDICTION AND VENUE

4.      This Court has federal question jurisdiction, pursuant to 28 U.S.C. § 1331, over claims arising under 42 U.S.C. § 1983.

5.      Supplemental jurisdiction over Carter's pendent state law claims exists pursuant to 28 U.S.C. § 1367(a).

6.      Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in the Western District of Kentucky, the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

7.      Venue is also proper in the Western District of Kentucky pursuant to 28 U.S.C. § 1391(b)(l), as it is believed that the Defendant resides in the Western District of Kentucky.

8.      Pursuant to the Seventh Amendment of the United States Constitution, Carter requests a jury trial on all issues and claims set forth in this Complaint.

## PARTIES

9.      Plaintiff, Ed Carter ("Carter"), is at all times herein mentioned a resident of the Commonwealth of Kentucky.

10.      Defendant, Jason Newby ("Newby"), was, at all times relevant to this complaint, a resident of the Commonwealth of Kentucky and employed as a law enforcement officer by Defendant Commonwealth of Kentucky, d/b/a the Kentucky State Police, and acting under color of state law.

## JURISDICTION

11.      This action arises under the United States Constitution, particularly under the provisions of the Fourth and Fourteenth Amendments to the United States Constitution, and under Federal law, including the Civil Rights Act, Title 42, United States Code § 1983

12.      This Court has jurisdiction over this case under the provisions of Title 28, United States Code § 1331 and § 1343.

13.      This Court also has supplemental jurisdiction to consider the Plaintiffs' pendant state law claims, which arise out of the same set of facts and/or controversy as set forth below pursuant to Title 28, United States Code § 1367.

## FACTS

14.      In September, 1994, Plaintiff was a police officer in the Oak Grove Police Department in Oak Grove, Christian County, Kentucky.

15.      Also in September, 1994, Plaintiff was employed part-time as the custodian of New Life Massage Parlor.

16.      The New Life Massage Parlor was owned by Tammy and Robbie Papler, and was being operated as a front for a prostitution business.

17.     The prostitution services at the massage parlor were actually run with surprisingly formal policies and procedures, including but not limited to a sign-in sheet and a stern condom use policy which was strictly enforced by the massage parlor.

18.     In the early morning hours of September 20th, 1994, the Plaintiff left the New Life Massage Parlor at approximately 2:00 a.m. Plaintiff's departure was confirmed by several of the employees of the massage parlor.

19.     At approximately 3:00 a.m., three of the five massage parlor employees left the parlor, leaving the two remaining employees alone in the building.

20.     At approximately 3:45 a.m., when the three massage parlor employees returned, they found the two remaining employees shot and stabbed in one of the massage rooms. They ran across the street to the Fort Campbell MP station and immediately called 911.

21.     When emergency services arrived, one of the two female massage parlor employees was already deceased. The other female massage parlor employee survived for a short amount of time but soon passed away from her injuries.

22.     Originally, the case was investigated by the Oak Grove police department, but the Christian County Sheriff's Department took over the investigation a few months after the homicides occurred.

23.     After the two victims were discovered, the Plaintiff was called to the scene with his canine unit. However, as the lead investigators had allowed approximately 30 individuals to enter the crime scene prior to the Plaintiff's arrival, Plaintiff never received any orders to utilize his canine unit in the investigation.

24.    The Christian County Sheriff's Department had primary responsibility for the investigation with assistance by the Federal Bureau of Investigations. No charges were ever filed in relation to this investigation.

25.    In 2006, the case was transferred as a cold case file to the Kentucky State Police. The case remained a cold case with the Kentucky State Police until 2011, when it was picked up by Detective Jason Newby with the Kentucky State Police.

26.    In November, 2013, Defendant Newby testified before the Christian County Grand Jury to secure an indictment against the Plaintiff and two other criminal defendants. Newby's grand jury testimony is replete with materially false statements and/or omissions made with reckless disregard for the truth, including but not limited to the following:

- Newby testified that he interviewed Tammy Papler who said it was common knowledge that Carter was wanting to take over the massage parlor business. That statement is false. In addition, there was no written statement from Newby regarding an interview of Tammy Papler.

- Newby testified, "My opinion is he went there, too. He saw the girls leave, contacted Mr. Black, said there's two left in there." This statement is false and/or made with a reckless disregard for the truth. There was no evidence of Carter seeing girls leave the massage parlor, no evidence that Carter contacted Mr. Black, and no evidence as to what statement Carter made to Mr. Black on the fabricated phone call.

- Newby testified that Carter's then wife, Carol, made statements that when Carter got home that night he was washing clothes which she thought was very odd. Carol's interview with the Federal Bureau of Investigations makes no mention of Carter washing

clothes that night or that Carol thought that washing clothes was odd. Newby never interviewed Carol.

- Newby testified that Carter and his co-defendant Duncan had been roommates less than a year before the murders. This statement was false. Carter and Duncan had not lived together, at the latest, since July 14, 1992, over two years prior to the homicides at the massage parlor.

- Newby testified about a completely unrelated disappearance that had occurred in Oak Grove in 1992, and testified that Carter was the canine officer assigned to that case. That statement is false because Carter did not even become a canine officer until April 1, 1994, over two years later.

27.     Plaintiff was incarcerated from November 24, 2013, through September, 14, 2016, when he was acquitted of all charges by jury trial.

28.     In his profoundly shoddy investigation of the deaths, Defendant Newby failed to interview or collect any evidence from several customers of the massage parlor who were listed on the parlor's sign-in sheet, failed to pursue multiple viable alternate suspects of the murder, and failed to perform or have performed relevant DNA analysis of genetic material found in the mouth, anus, vagina, and fingernails of the deceased victims, despite the fact that the DNA collected did not match the Plaintiff or either of his criminal co-defendants.

29.     Any alleged finding of probable cause by any grand jury or court made throughout the prosecution of the Plaintiff was founded upon the false and misleading testimony and false and misleading evidence propounded by the Defendant.

## COUNT I

### MALICIOUS PROSECUTION UNDER 42 U.S.C. § 1983 AND KENTUCKY COMMON LAW AGAINST ALL INDIVIDUAL DEFENDANTS

30.     Plaintiff incorporates by reference, as if set forth fully herein, each and every averment, allegation, or statement contained in the previous paragraphs of this Verified Complaint.

31.     Defendant Newby, in his individual capacity, acting with malice, took steps to initiate and continue the prosecution of Carter without probable cause.

32.     Any probable cause found by any grand jury or court at any time throughout Carter's criminal proceedings was founded on the false testimony and falsified evidence manufactured and provided by Newby.

33.     In furtherance of the malicious prosecution, Newby suppressed exculpatory evidence, fabricated evidence, fabricated and pressured inculpatory witness statements, failed to conduct an adequate investigation of the crime, and/or covered up impeaching evidence of his own misconduct.

34.     Newby's actions to deprive Carter of his liberty without probable cause were in violation of clearly established constitutional law under the Fourth and Fourteenth Amendments, and constitute the tort of malicious prosecution under Kentucky common law, and no law enforcement officer in 2011 or after would have believed that his actions were lawful.

35.     On September 8, 2016, a trial by jury acquitted Plaintiff of all charges alleged against him.

36.     Thus, the charges resolved fully in Carter's favor.

37.     Carter had maintained his innocence throughout the court proceedings and never stipulated to probable cause at any point throughout the proceedings.

38.     Defendant Newby's actions directly and proximately caused Carter's arrest, indictment, malicious prosecution, and deprivation of liberty for nearly three (3) years, as well as all the ongoing injuries and damages set forth above.

39.     Defendant Newby is not entitled to a qualified governmental immunity defense for the Kentucky tort of malicious prosecution.

## COUNT II

### VIOLATIONS OF PROCEDURAL AND
### SUBSTANTIVE DUE PROCESS UNDER 42 U.S.C. § 1983

40.     Plaintiff Carter incorporates by reference, as if set forth fully herein, each and every averment, allegation, or statement contained in the previous paragraphs of this Verified Complaint.

41.     Newby deprived Carter of liberty without due process of law and of a fair trial, by deliberately suppressing exculpatory evidence, fabricating evidence, fabricating and pressuring inculpatory witness statements, failing to conduct an adequate investigation of the crime, and/or covering up impeachment evidence of his own misconduct, all of which was used to arrest, indict,  prosecute, and incarcerate Carter.

42.     Defendant Newby's deliberate and intentional concealment, suppression and destruction of exculpatory and impeachment information directly and proximately caused Carter unfair criminal proceedings, coerced plea, and deprivation of liberty without due process of law during her lengthy incarceration, as well as all the ongoing injuries and damages Carter sustained.

43.     Newby's acts and omissions violated Carter's clearly established rights under the procedural due process component of the Fourteenth Amendment, including his right to a fair trial, and caused Carter to suffer injuries and damages.

8

44.    No reasonable law enforcement officer in 2011 or after would have believed that Newby's acts and omissions in this case were lawful.

45.    Newby's intentional, reckless, or deliberately indifferent acts and omissions in failing to conduct a constitutionally adequate investigation directly and proximately caused Carter's deprivation of liberty without due process of law during his lengthy incarceration, as well as all the ongoing injuries and damages set forth above.

46.    In Newby's drive to pursue Carter's wrongful prosecution and incarceration, Newby deliberately engaged in arbitrary and conscious-shocking conduct that contravened fundamental canons of decency and fairness and violated Carter's substantive due process rights under the Fourteenth Amendment.

47.    Overall, Carter's treatment by Newby offends principles of justice so rooted in the traditions and conscience of the citizens of the United States so as to be ranked as fundamental.

**WHEREAS**, Plaintiff, Edward Tyrone Carter, prays as follows:

A.    That the Court award compensatory damages to him and against the Defendant, in an amount to be determined at trial;

B.    That the Court award punitive damages to him, and against Defendant, in an amount, to be determined at trial, that will deter such conduct by Defendant in the future;

C.    For a trial by jury;

D.    For pre-judgment and post-judgment interest and recovery of his costs, including reasonable attorneys' fees pursuant to 42 U.S.C. § 1988 for all 42 U.S.C. § 1983 claims and costs pursuant to 42 U.S.C. § 1920; and

E.    For any and all other relief to which he may be entitled.f

Respectfully submitted,


*/s/ Garry R. Adams*
GARRY R. ADAMS

A. PETE LAY
CLAY DANIEL WALTON & ADAMS, PLC
462 S. Fourth Street, Suite 101
Louisville, Kentucky 40202
(502) 561-2005
garry@justiceky.com
pete@justiceky.com
*Counsel for Plaintiff*

## VERIFICATION STATEMENT

I, Edward Tyrone Carter, after being duly sworn, state that I have read this Complaint and that the allegations contained therein are true and correct to the best of my knowledge and belief, and that this Complaint is being brought pursuant to my direction.

EDWARD TYRONE CARTER

COMMONWEALTH OF KENTUCKY    )
                            ) ss:
COUNTY OF JEFFERSON         )

SUBSCRIBED AND SWORN TO before me by EDWARD TYRONE CARTER this

31 day of August , 2017

JESSICA DOHERTY WOODS
Notary Public-State at Large
KENTUCKY - Notary ID # 558434
My Commission Expires June 06, 2020

Notary Public, State-at-Large, Kentucky

My commission expires: June 6, 2020