EDWARD TYRONE CARTER,                                                                PLAINTIFF

v.

JASON NEWBY,                                                                              DEFENDANT
*in his individual capacity*

# MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant Jason Newby's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), [R. 8]. Plaintiff Edward Tyrone Carter responded, [R. 11], and Newby replied, [R. 12]. Fully briefed, this matter is ripe for adjudication. For the following reasons, Newby's Motion to Dismiss, [R. 8], is **GRANTED IN PART AND DENIED IN PART**.

## BACKGROUND

The following Background section is taken from Carter's Complaint, the veracity of which is assumed for purposes of a Rule 12(b)(6) motion, as explained below. This case arises out of a criminal investigation and, later, a criminal prosecution in Christian County, Kentucky, which spanned from the 1990s into the 2010s. In September of 1994, Carter was a police officer in the town of Oak Grove, which is located in Christian County, Kentucky. [R. 1 at 3 (Carter Complaint).] At that time, he was also employed part-time as the custodian of the New Life Massage Parlor ("the Parlor"). [*Id.*] According to Carter, the Parlor was actually a front for a prostitution business. [*Id.*] Carter alleges that the Parlor was run with certain policies and procedures, including a sign-in sheet. [*Id.* at 4.]

1

According to Carter, at approximately 2:00 A.M. on September 20, 1994, Carter left the Parlor, followed by the departure of three of the five employees one hour later. [*Id.*] Two employees remained alone in the building. [*Id.*] At approximately 3:45 A.M., the three Parlor employees returned to find the two employees who stayed behind shot and stabbed. [*Id.*] Both victims perished from their injuries. [*Id.*] After finding the two victims, the employees called the police. [*Id.*] Carter was called to the scene with his canine unit. [*Id.*] Carter alleges that "as the lead investigators had allowed approximately 30 individuals to enter the crime scene prior to [Carter]'s arrival, [Carter] never received any orders to utilize his canine unit in the investigation." [*Id.*] A few months after the homicide occurred, the Christian County Sheriff's Department took over the investigation with assistance from the Federal Bureau of Investigation. [*Id.* at 5.] Carter states that no charges were filed in relation to this investigation. [*Id.*]

In 2006, the case, still unsolved, was transferred to the Kentucky State Police. [*Id.*] The case was assigned to Newby. [*Id.*] In November 2013, Newby secured an indictment in Christian County against Carter and two other individuals after testifying before a grand jury there. [*Id.*] Carter's Complaint alleges that Newby made "materially false statements and/or omissions . . . with reckless disregard for the truth" while testifying before the grand jury. [*Id.*] These statements, according to Carter, include but are not limited to the following:

> • Newby testified that he interviewed Tammy Papler [an owner of the massage parlor] who said it was common knowledge that Ed Carter was wanting to take over the massage parlor business. That statement is false. In addition, there was no written statement from Newby regarding an interview of Tammy Papler.
>
> • Newby testified, 'My opinion is he went there, too. He saw the girls leave, contacted Mr. Black, said there's two left in there.' This statement is false and/or made with a reckless disregard for the truth. There was no evidence of Carter seeing girls leave the massage parlor, no evidence that Carter contacted Mr. Black, and no evidence as to what statement Carter made to Mr. Black on the fabricated phone call.

2

> • Newby testified that Carter's then wife, Carol, made statements that when Carter got home that night he was washing clothes which she thought was very odd. Carol's interview with the [FBI] makes no mention of Carter washing clothes that night or that Carol thought that washing clothes was odd. Newby never interviewed Carol.
>
> • Newby testified that Carter and his co-defendant Duncan had been roommates less than a year before the murders. This statement was false. Carter and Duncan had not lived together, at the latest . . . over two years prior to the homicides . . ..
>
> • Newby testified about a completely unrelated disappearance that had occurred in Oak Grove in 1992, and testified that Carter was the canine officer assigned to that case. That statement is false because Carter did not even become a canine officer until . . . over two years later.

[*Id.* at 5-6.] Carter further alleges:

> In his profoundly shoddy investigation of the deaths, Defendant Newby failed to interview or collect any evidence from several customers of the massage parlor who were listed on the parlor's sign-in sheet, failed to pursue multiple viable alternate suspects of the murder, and failed to perform or have performed relevant DNA analysis of genetic material found in the mouth, anus, vagina, and fingernails of the deceased victims, despite the fact that the DNA collected did not match the Plaintiff or either of his criminal co-defendants.

[*Id.* at 6.] Carter was "incarcerated from November 24, 2013, through September 14, 2016, when he was acquitted of all charges by jury trial." [*Id.* at 6.] Carter brought claims against Newby (1) for malicious prosecution under 42 U.S.C. § 1983 and under Kentucky common law, and (2) for violations of procedural and substantive due process under the Fourteenth Amendment to the United States Constitution. [*Id.* at 7-8.] Newby filed the instant Motion pursuant to Rule 12(b)(6) to dismiss all of Carter's claims against him. [R. 8.]

## LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to survive a motion to dismiss under Rule 12(b)(6), a party must "plead enough 'factual matter' to raise a 'plausible' inference of

3

wrongdoing." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). When considering a Rule 12(b)(6) motion to dismiss, the Court must presume all of the factual allegations in the complaint are true and draw all reasonable inferences in favor of the non-moving party. *Total Benefits Planning Agency, Inc., 552 F.3d at 434 (citing Great Lakes Steel, 716 F.2d at 1105).* "The court need not, however, accept unwarranted factual inferences." *Id.* (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). Should the well-pleaded facts support no "more than the mere possibility of misconduct," then dismissal is warranted. *Iqbal*, 556 U.S at 679. The Court may grant a motion to dismiss "only if, after drawing all reasonable inferences from the allegations in the complaint in favor of the plaintiff, the complaint still fails to allege a plausible theory of relief." *Garceau v. City of Flint*, 572 F. App'x. 369, 371 (6th Cir. 2014) (citing *Iqbal*, 556 U.S. at 677–79).

## DISCUSSION

Newby moves the Court to dismiss both counts of Carter's Complaint. This includes a claim of malicious prosecution under both federal and state law, [R. 1 at 7], and a claim of a due process violation, [*Id*. at 8].

### A. Malicious Prosecution

Carter's first claim is for malicious prosecution, under both 42 U.S.C. § 1983 and Kentucky common law. [*Id*. at 7.] In order for a plaintiff to prevail on a claim of malicious prosecution under § 1983, he must show four things: first, "that a criminal prosecution was

initiated against [him] and that the defendant 'ma[d]e, influence[d], or participate[d] in the decision to prosecute.'" *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010) (quoting *Fox v. DeSoto*, 489 F.3d 227, 237 (6th Cir. 2007)). "Second, because a § 1983 claim is premised on the violation of a constitutional right, the plaintiff must show that there was a lack of probable cause for the criminal prosecution." *Id.* (citing *Fox*, 489 F.3d at 237 and *Voyticky v. Village of Timberlake, Ohio*, 412 F.3d 669, 675 (6th Cir. 2005)). Third, the plaintiff must prove "that, 'as a consequence of a legal proceeding,' the plaintiff suffered a 'deprivation of liberty,' as understood in our Fourth Amendment jurisprudence, apart from the initial seizure. *Id.* at 308-09 (quoting *Johnson v. Knorr*, 477 F.3d 75, 81 (3d Cir. 2007)). Finally, "the criminal proceeding must have been resolved in the plaintiff's favor." *Id.* at 309 (citing *Heck v. Humphrey*, 512 U.S. 477, 484 (1994)). It is not necessary that the plaintiff show malice or a specific intent on the part of the defendant to violate the plaintiff's constitutional rights. *See id.*

The requirements for a plaintiff to proceed with a malicious prosecution claim under Kentucky common law track its federal counterpart quite closely but not precisely. As the Supreme Court of Kentucky explained in *Martin v. O'Daniel*, 507 S.W.3d 1, 11-12 (Ky. 2016), "[a] malicious prosecution action may be established" where the plaintiff shows five separate elements; these are:

> 1) the defendant initiated, continued, or procured a criminal or civil judicial proceeding, or an administrative disciplinary proceeding against the plaintiff;
> 2) the defendant acted without probable cause;
> 3) the defendant acted with malice, which, in the criminal context, means seeking to achieve a purpose other than bringing an offender to justice; and in the civil context, means seeking to achieve a purpose other than the proper adjudication of the claim upon which the underlying proceeding was based;
> 4) the proceeding . . . [was] terminated in favor of the person against whom it was brought; and
> 5) the plaintiff suffered damages as a result of the proceeding.

5

*Id.* The crucial difference between an action under § 1983 and one under Kentucky common law is that the former does not require a showing of malice, while the latter does. *See id.*

Newby presents three arguments regarding why, in his view, Carter's claims for malicious prosecution fail to state a claim upon which relief can be granted and must be dismissed. First, Newby argues that he is entitled to absolute immunity with respect to his grand jury testimony. [R. 8-1 at 4 (Newby Motion to Dismiss Memo).] Second, Newby argues that he is entitled to qualified immunity in regards to Carter's allegation of a "shoddy investigation" because "[t]here is currently no precedent within the Sixth Circuit that recognizes a constitutional violation of a negligent investigation." [*Id*. at 5.] Lastly, Newby contends that, on the merits, Carter's Complaint fails to state a claim upon which relief can be granted. [*Id*. at 7.] The Court will address each of these arguments in turn.

As the Supreme Court has noted, "grand jury witnesses should enjoy the same immunity as witnesses at trial. This means that a grand jury witness has absolute immunity from any § 1983 claim based on the witness' testimony." *Rehberg v. Paulk*, 566 U.S. 356, 369 (2012). Additionally, "this rule may not be circumvented by claiming that a grand jury witness conspired to present false testimony or by using evidence of the witness' testimony to support any other § 1983 claim concerning the initiation or maintenance of a prosecution." *Id.* This is because, "[w]ere it otherwise, 'a criminal defendant turned civil plaintiff could simply reframe a claim to attack the preparation instead of the absolutely immune actions themselves.' " *Id.* (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 283 (1993) (Kennedy, J., concurring in part and dissenting in part)).

Newby correctly points out that many of the allegations laid out in Carter's Complaint stem from Newby's appearance before a grand jury, during which time he testified about Carter.

6

[*See* R. 8-1 at 3-4.] The Supreme Court's ruling in *Rehberg* makes it plain that, insofar as Carter has attempted to state a claim using Newby's testimony from this aforementioned grand jury proceeding, these facts must be discounted. In other words, this Court now faces the task of, after setting aside Carter's allegations concerning Newby's grand jury testimony, determining whether Carter has stated a claim upon which relief can be granted under Rule 12(b)(6). Newby's point regarding the grand jury testimony is well taken, and the Court will not analyze any of Newby's testimony from the grand jury proceeding, or from his preparations for such testimony, in reaching its decision regarding the instant Motion.

Newby's second argument relates to qualified immunity. Pursuant to the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The question of whether qualified immunity is available to a defendant involves a two-step process: "[f]irst, the court must determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred." *Bell v. Johnson*, 308 F.3d 594, 601 (6th Cir. 2002). Then, "if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Saucier v. Katz*, 533 U.S. 194 (2001). In order for a law to be deemed as "clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Bell*, 308 F.3d at 602. In other words, "the unlawfulness [of the action] must be apparent." *Id.*

As the Sixth Circuit has noted, "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity," because even though "an officer's 'entitlement to qualified immunity is a threshold question to be resolved at the earliest possible point,' " this is typically done at the summary judgment phase "and not [by] dismissal under Rule 12." *Wesley v. Campbell*, 779 F.3d 421, 433-34 (6th Cir. 2015) (quoting *Vakilian v. Shaw*, 335 F.3d 509, 516 (6th Cir. 2003)). However, Newby still asks the Court to dismiss Carter's complaint on the grounds of qualified immunity because the Complaint contains "no specific allegations of a constitutional violation." [R. 8-1 at 5.] Under Count I of his Complaint, Carter lays out his allegations of malicious prosecution, wherein he states that Newby's "actions to deprive Carter of his liberty without probable cause were in violation of clearly established constitutional law under the Fourth and Fourteenth Amendments, and constitute the tort of malicious prosecution . . . and no law enforcement officer in 2011 or after would have believed that his actions were lawful." [R. 1 at 7.] The Sixth Circuit has stated that it is typically crucial for a plaintiff to be afforded "an opportunity to initiate discovery in order to develop a factual record upon which a court may then determine whether dismissal based on qualified immunity is proper." *Grose v. Caruso*, 284 F. App'x 279, 283 (6th Cir. 2008). This is because the qualified immunity question is an extremely fact-specific one. Here, the Court finds that Carter has sufficiently alleged a constitutional violation for the purposes of this early stage in litigation, and further development is needed in this case before the Court can ascertain whether Newby is entitled to the defense of qualified immunity.

Newby's final argument with respect to Carter's malicious prosecution claims is that, on the merits, Carter simply fails to state a claim upon which relief can be granted. [R. 8-1 at 7.] As noted above, a plaintiff is required to prove four separate elements in order to show malicious

prosecution under § 1983. *See Sykes*, 625 F.3d at 308-09. And under Kentucky common law, a plaintiff is required to show five separate elements. *See Martin*, 507 S.W.3d at 11-12. The key difference between § 1983 and Kentucky common law is that the former does not require a showing of malice, while the latter does.[1] *See id.* Therefore, the question becomes whether, after setting aside Newby's testimony before the grand jury, Carter has stated a claim "that is plausible on its face." *Twombly*, 550 U.S. at 570.

Specifically, Newby only disputes the first two elements required of a malicious prosecution claim. First, Newby argues "[t]he Complaint does not allege sufficient facts to establish that Lt. Newby initiated the charges against the Plaintiff, only that he testified at the Grand Jury." [R. 12 at 5 (Newby Reply).] Furthermore, he states "[t]here are no allegations that Lt. Newby initiated the charges by arrest or citation or that Lt. Newby provided false, misleading, or inaccurate information to pressure the prosecutor into initiating the indictment." [*Id.*] The Court disagrees. In direct contrast to this statement, the Complaint alleges in its malicious prosecution claim under Count I: "Defendant Newby, in his individual capacity, acting with malice, took steps to initiate and continue the prosecution of Carter without probable cause." [R. 1 at 7.] Moreover, Carter alleges in the Complaint that Newby "employed improper tactics that resulted in Plaintiff's being charged with a murder" and "lied and made false misrepresentations of fact in setting in motion and continuing charges against the Plaintiff . . .." [*Id.* at 1-2.] Therefore, the Court finds that Carter has sufficiently alleged the first element of a malicious prosecution claim for the purpose of surviving a motion to dismiss.

Secondly, Newby contends that "[t]he Complaint also fails to establish a lack of probable cause." [R. 12 at 5.] Newby particularly argues that "the Complaint lacks any other details

---

[1] The Court notes that Newby does not dispute the element under Kentucky common law which requires a showing of malice.

[beyond grand jury testimony] that would establish a lack of probable cause or that Lt. Newby continued or procured the charges by providing false or misleading information to the prosecutor." [*Id*. at 6.] In his Complaint, Carter alleges "[i]n furtherance of the malicious prosecution, Newby suppressed exculpatory evidence, fabricated evidence, fabricated and pressured inculpatory witness statements, failed to conduct an adequate investigation of the crime, and/or covered up impeaching evidence of his own misconduct." [R. 1 at 7, ¶ 33.] Without citing any case law for comparison, Newby declares these claims to be nothing more than "bare-bone recitations of a cause of action" that warrant dismissal for failure to state a claim. [R. 12 at 4.] True, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (2009). However, the Court finds that Carter's Complaint alleges enough detail to at least rise above such "threadbare recitals" that would not survive a motion to dismiss.

As recognized by both parties, "the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause." *Webb v. United States*, 789 F.3d 647, 660 (6th Cir. 2015) (quotation marks and citation omitted). However, the Sixth Circuit provided an exception to the presumption of probable cause under the following test:

> [W]here (1) a law-enforcement officer, in the course of setting a prosecution in motion, either knowingly or recklessly makes false statements (such as in affidavits or investigative reports) or falsifies or fabricates evidence; (2) the false statements and evidence, together with any concomitant misleading omissions, are material to the ultimate prosecution of the plaintiff; and (3) the false statements, evidence, and omissions do not consist solely of grand-jury testimony or preparation for that testimony (where preparation has a meaning broad enough to encompass conspiring to commit perjury before the grand jury), the presumption that the grand-jury indictment is evidence of probable cause is rebuttable and not conclusive.

10

*King v. Harwood*, 852 F.3d 568, 587–88 (6th Cir. 2017), *cert. denied,* 138 S. Ct. 640, 199 L. Ed. 2d 527 (2018). In *Jones v. Clark County, KY*, the Sixth Circuit followed this test in finding that the plaintiff overcame the defendant police officer's motion to dismiss. *Jones v. Clark Cty., KY*, 690 F. App'x 334, 336 (6th Cir. 2017). In *Jones*, the defendant officer recommended child pornography charges against the plaintiff even though the police did not investigate whether any of the devices seized from the plaintiff's home contained child pornography. 690 F. App'x at 335. One year after the plaintiff was indicted, the plaintiff's attorney had an expert examine the devices, and no evidence of child pornography was found. *Id*. Thereafter, state court ordered the plaintiff's release after spending 14 months in jail. *Id*. Later, on appeal from a malicious prosecution claim, the Sixth Circuit held that the plaintiff successfully alleged an absence of probable cause when he claimed that the defendant misled the prosecutor "through his deficient and reckless investigation and the critical omission of material evidence . . . ."

Similar to the plaintiff in *Jones*, Carter alleges that Newby performed a deficient investigation and omitted evidence by stating in the Complaint:

> In his profoundly shoddy investigation of the deaths, Defendant Newby failed to interview or collect any evidence from several customers of the massage parlor who were listed on the parlor's sign-in sheet, failed to pursue multiple viable alternate suspects of the murder, and failed to perform or have performed relevant DNA analysis of genetic material found in the mouth, anus, vagina, and fingernails of the deceased victims, despite the fact that the DNA collected did not match the Plaintiff or either of his criminal co-defendants.

[R. 1 at 6, ¶ 28.] This provides additional detail to Carter's base allegation that Newby "suppressed exculpatory evidence, fabricated evidence, fabricated and pressured inculpatory witness statements, failed to conduct an adequate investigation of the crime, and/or covered up impeaching evidence of his own misconduct." [*Id*. at 7, ¶ 33.] Although Carter's Complaint might not contain the objective, exculpatory evidence of *Jones*, it still surpasses the allegations

found to be "bare-bones" in other cases from courts of this circuit. *See, e.g., Allen v. Rucker*, 304 F. Supp. 3d 638, 646 (E.D. Ky. 2018) (finding that the plaintiff's claim, amongst many allegations, that the defendant "conducted an investigation in which Defendant fabricated conclusions that were both unsupported by the data, failed to and/or attempted to suppress exculpatory evidence" was insufficient without revealing specific facts or evidence); *Leath v. Webb*, No. 5:17-CV-38-JMH, 2018 WL 3213610, at *8 (E.D. Ky. June 29, 2018) (finding that the plaintiff "cannot rebut the probable-cause presumption merely by denying the assault" of which he was charged); *Grogg v. Tennessee*, No. 2:15-CV-299-JRG-MCLC, 2018 WL 3234170, at *7 (E.D. Tenn. July 2, 2018) (finding that plaintiff's claims that defendants "destroyed exculpatory evidence" were speculative and conclusory when he failed to allege what exculpatory evidence was withheld).

In sum, the Court finds that Carter satisfied the Sixth Circuit test for an exception to the presumption of probable cause as laid out in *King*: he alleges that Newby initiated the prosecution of Carter by intentionally, or with deliberate indifference, suppressing and fabricating material evidence and witness statements outside of his grand jury testimony. [*Id*. at 7.] Moreover, he alleged details concerning the evidence omitted through Newby's inadequate investigation. [*Id*. at 6, ¶ 28.] Therefore, the Court finds that Carter has sufficiently alleged the second element of a malicious prosecution claim for the purpose of surviving a motion to dismiss. Newby's Motion to Dismiss, [R. 8], as it pertains to Carter's claim of malicious prosecution is DENIED.[2]

---

[2] Newby makes two other arguments in support of this portion of his Motion, both lacking in any sort of case law for comparison. First, Newby references the jury trial in Christian County Circuit Court and argues that "the Court or the prosecutor could have agreed with the Plaintiff that the charges against him were brought without probable cause but allowed the case to continue all the way to a jury." [R. 12 at 7.] The Court finds this conjecture as to the reasoning of the court or the prosecution of the jury trial unconvincing. At this early stage in the proceedings, the Court finds that Carter sufficiently alleged facts necessary for this element in his Complaint to this Court. Second,

## B. Due Process

Carter's second claim is for violations of procedural and substantive due process under the Fourteenth Amendment. [R. 1 at 8.] Specifically, Carter claims he was deprived "of liberty without due process of law and of a fair trial" by Newby's "deliberate and intentional concealment, suppression and destruction of exculpatory and impeachment information," which Carter claims "caused [him] unfair criminal proceedings, coerced plea, and deprivation of liberty without due process of law during [his] lengthy incarceration . . . ." [R. 1 at 8.] The Court will first address Carter's claim of procedural due process. "To establish a procedural due process claim in a section 1983 action, plaintiffs must establish three elements: (1) that they have a life, liberty or property interest protected by the Due Process Clause; (2) that this interest was deprived," and finally, "(3) that the state did not afford them adequate procedures prior to depriving them of their protected interest." *Berridge v. Heiser*, 993 F. Supp. 1136, 1141-42 (S.D. Ohio 1997).

"*Brady v. Maryland* familiarly holds that prosecutors must turn over favorable evidence to the accused when the evidence is material either to guilt or punishment; wrongful withholding is a violation of the right to due process." *Robertson v. Lucas*, 753 F.3d 606, 619-20 (6th Cir. 2014) (citing *Brady v. Maryland*, 373 U.S. 83, 89 (1963)). And "[e]vidence is material when 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' " *Id.* at 620 (quoting *Kyles v. Whitley*, 514 U.S. 419, 433-34 (1995)). As the *Robertson* Court explained, "[t]his obligation extends to evidence that is favorable to the accused 'either because it is exculpatory, or because it is impeaching.' " *Id.* (quoting *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)). More recently, this requirement

---

Newby argues that Carter had enough time to gather information to make sufficient allegations. As the Court finds that Carter has made sufficient allegations for the purposes of a motion to dismiss, this argument is moot.

has been extended from prosecutors to also include law enforcement officers, "[b]ecause the police are just as much an arm of the state as the prosecutor, [and] the police inflict the same constitutional injury when they hide, conceal, destroy, withhold, or even fail to disclose material exculpatory information." *Id.* (internal quotation marks omitted). Importantly though, where "the underlying criminal proceeding terminated in [the plaintiff's] favor, he has not been injured by the act of wrongful suppression of exculpatory evidence." *McCune v. City of Grand Rapids*, 842 F.2d 903, 907 (6th Cir. 1988). In such a case, the plaintiff will be seen to have failed to state a claim, although "the wrongful suppression of exculpatory evidence may [still] be relevant to [the plaintiff's] claim of malicious prosecution." *Id.*

The Court is of the opinion that, due to the fact that the underlying criminal proceedings against Carter were terminated in his favor, he has failed to state an independent claim for a violation of procedural due process relating to the alleged suppression or concealment of evidence favorable to himself. Newby cites to a decision of a sister court in the Sixth Circuit, which this Court feels sums up this claim quite thoroughly. [R. 8-1 at 9-10 (citing *Stillwagon v. City of Delware*, 175 F. Supp. 3d 874, 900-01 (S.D. Ohio 2016))]. In *Stillwagon*, the Southern District of Ohio dealt with a due process claim under facts bearing some resemblance to those of the case currently before this Court. There, a motorcyclist, Mr. Stillwagon, was the victim of extreme road rage by another motorist. The prolonged incident culminated in a confrontation between the two men, at which time Stillwagon discharged a handgun multiple times at the hood of the motorist's car in an effort to prevent the motorist from running over him. *Id.* at 886-88. Stillwagon possessed a legal permit for the gun, and witnesses corroborated his story that the motorist initiated and persisted in confronting Stillwagon when Stillwagon only sought to get away and/or remain safe. *Id.* Nonetheless, Stillwagon was indicted "and charged with four counts

of felonious assault." *Id.* at 887. "In addition to manufacturing testimony, the Police Defendants [in the later civil action] also allegedly destroyed, failed to preserve, and failed to disclose exculpatory evidence" relating to the road rage incident. *Id.* at 888. Stillwagon was acquitted at trial. Thereafter, in the civil action, Stillwagon asserted, among other claims, a claim for the violation of his due process rights stemming from the officers' alleged failure to turn over exculpatory evidence and for otherwise destroying or concealing such evidence. *Id.*

The district court in *Stillwagon* dismissed the Fourteenth Amendment due process claim on the pleadings, stating specifically that "if fabricating, destroying, or failing to preserve evidence constitutes a due process violation, the violation is likely remedied through a *Brady* claim." *Id.* at 900 (citing *Moldowan v. City of Warren*, 578 F.3d 351, 379-81, 391-92, 396-97 (6th Cir. 2009)). Further, "[t]he [*Stillwagon*] Court d[id] not interpret *Moldowan* as establishing new, stand-alone due process claims for fabricating evidence, destroying evidence, or failing to preserve evidence." *Id.* (citing *Moldowan*, 587 F.3d at 379-81, 391-92, 396-97). Instead, "the Court interpret[ed] *Moldowan* as a clarification from the Sixth Circuit that *Brady* claims 'reach more broadly' than some parties had assumed." *Id.* (quoting *Moldowan*, 578 F.3d at 379). As a result, the *Stillwagon* court determined that the police department's alleged acts of fabricating, destroying and failing to preserve evidence "fall within the purview of a *Brady* claim," and Stillwagon could not "assert a *Brady* claim given that he was acquitted at [the underlying criminal] trial." *Id.* at 901.

*Stillwagon* tracks the facts of the instant case quite closely. Carter's main argument in support of his claim for a violation of due process stems from Newby's alleged suppression, fabrication, and covering up of favorable evidence in the underlying criminal trial. This Court finds the *Stillwagon* court's rule and reasoning very persuasive. As such, this Court holds that

15

Carter has failed to state a claim for a procedural due process violation under the Fourteenth Amendment due to the fact that he was acquitted in the underlying criminal action.

Plaintiff also asserts a substantive due process claim. "The substantive component of the Due Process Clause protects 'fundamental rights' that are so 'implicit in the concept of ordered liberty' that 'neither liberty nor justice would exist if they were sacrificed.' " *Doe v. Michigan Dept. of State Police*, 490 F.3d 491, 499 (6th Cir. 2007) (quoting *Palko v. Connecticut*, 302 U.S. 319, 325 (1937)). Such fundamental rights "include 'the rights to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, and to abortion.' " *Id.* (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997)). Notably though, "[t]he Supreme Court has cautioned . . . that it has 'always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended.' " *Id.* at 500 (quoting *Glucksberg*, 521 U.S. at 720).

Here, as in *Stillwagon*, "none of the non-*Brady* acts highlighted by [Plaintiff] implicates a recognized substantive due process right." *Stillwagon*, 175 F. Supp. 3d at 901 (citing *Bigi v. Large*, No. 3:11-cv-229, 2011 WL 6813163, at *6 (S.D. Ohio Dec. 28, 2011)). And this Court, consistent with the *Stillwagon* court, is not "inclined to recognize a new substantive due process right to guard against the non-*Brady* acts purportedly undertaken by the . . . Defendant[ ]." *Id.* (citing *Glucksberg*, 521 U.S. at 720). As the Sixth Circuit discussed in *Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 313 (6th Cir. 2005), Carter's "reliance on the Due Process Clause is misplaced . . . because it is the Fourth Amendment which establishes procedural protections in this part of the criminal justice area." Additionally, "[t]he Supreme Court has stated that 'the Fourth Amendment was tailored explicitly for the criminal justice system, and its balance

between individual and public interests always has been thought to define the process that is due for seizures of persons or property in criminal cases, including the detention of suspects pending trial.' " *Id.* (quoting *Gerstein v. Pugh*, 420 U.S. 103, 125 n. 27 (1975)); *see also Manuel v. City of Joliet*, 137 S. Ct. 911, 917 (2017) (explaining that "a claim challenging pretrial detention f[alls] within the scope of the Fourth Amendment."). As such, on the merits, Carter has failed to state a claim under the substantive due process clause of the Fourteenth Amendment.[3]

In sum, Newby's Motion to Dismiss, [R. 8], as it pertains to Carter's claim of a violation of procedural and substantive due process is DENIED.

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED**: Newby's Motion to Dismiss, [R. 8], is **DENIED** as it pertains to Carter's malicious prosecution claims under Count I of the Complaint and **GRANTED** as it pertains to Carter's due process claims under Count II of the Complaint. **A Telephonic Scheduling Conference is set for July 23, 2018 at 2:00 P.M.** Court shall place the call.

    IT IS SO ORDERED.

*Thomas B. Russell*

**Thomas B. Russell, Senior Judge**
**United States District Court**

cc: Counsel of Record

July 13, 2018

---

[3] Newby also argues that Count II of Carter's Complaint fails to allege any facts in support of this claim. [R. 8-1 at 8.] The Court finds it unnecessary to address this argument as it already granted Newby's motion to dismiss Count II.